[Civil No. 2589.   Filed October 17, 1927.]

[259 Pac. 1049.]

E. C. GRASTY and R. S. GRASTY, Copartners, Doing Business Under the Firm Name of E. C. GRASTY & BRO., Appellants, v. BYRON SABIN, Appellee.

Messrs. Armstrong, Lewis & Kramer, for Appellants.

Messrs. Cox, Moore & Janson, for Appellee.

ROSS, C. J.—This is an action by Byron Sabin against E. C. Grasty and R. S. Grasty, partners, brought under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162, as amended by Laws 1919, chap. 15) for personal injuries alleged to have been caused by an accident due to the condition of plaintiff's occupation. The defendant interposed in his answer to the complaint the defense that plaintiff's injury was caused by his sole negligence. The trial was before a jury and resulted in a verdict and judgment for plaintiff in the sum of $2,350. Upon defendants' motion, the court ordered a new trial, on account of the verdict being excessive, unless plaintiff consented to a remission of $1,000 from the judgment. We conclude consent was given by plaintiff (although the record is silent thereon), since no new trial was granted. The appeal is from the judgment.

The material and necessary facts to an understanding of the case are substantially as follows: In April, 1924, plaintiff entered the employment of the defendants, who were operating in the town of Winkleman, Gila county, a garage, an ice plant, a light plant, and a water plant, as a mechanic. His duties were largely at the garage, but as occasion required he performed other duties in connection with the other plants of defendants. Among his "other duties" was to help look after the pump used in the water plant. He assisted in keeping the pump and its connections in repair and running order and when necessary would turn on the power for pumping. The pump machinery was located in a small concrete building a short distance from the garage, and con-

sisted of a five-horsepower electric motor, the pump, and connecting parts. In the pump were two wheels, one about eighteen inches in diameter fitted with cogs, and the other from four to six inches in diameter also fitted with cogs, and when the pump was operating the cogs of the smaller wheel meshed in the cogs of the larger. There was a guard or shield that covered the gear mesh, held in place by cap screws. It became necessary to take up the bearings and to put into the pump new packing and do some other repairs to it, and on October 21st, 1925, Arthur L. Richardson, also an employee of defendants, and plaintiff, undertook to do the necessary work. They removed the guard and worked at the job continuously from 8 A. M., except meal hours, until 11:15 at night. Before leaving for home they started the pump without replacing the guard. Plaintiff testified that R. S. Grasty was present at the time and when the omission was suggested said that "we might as well leave it off until we finished the work; the place was locked up, and nobody's kids will get in and get tangled up with the machinery." R. S. Grasty visited the pump-house during the day and at night and saw what was being done, but denies giving the instructions about leaving the guard off, or that he was present when it was mentioned. Richardson testified that the question of replacing the guard was mentioned, but whether Grasty was present or gave any instructions he could not say; that he knew Grasty "was in the car before we (meaning himself and plaintiff) were."

The work of repairing the pump not having been completed, the guard remained off, the plaintiff and other employees of defendants attending and caring for the pump as usual. At 1 o'clock P. M. on October the 29th, plaintiff went from his home directly to the pump-house and upon his arrival turned on the power and while the pump was operating started

to grease it. Just as he was in the act of applying the lubricant to the gears his foot slipped and he fell. In an effort to catch himself and break the fall the first and second fingers of his left hand came into contact with the gears and were so badly crushed that they had to be amputated to the first joint. A leakage of water and grease from the pump on to the floor made it slippery, and it was this condition of the floor that caused plaintiff to lose his footing.

The defendants' first assignment is that the court erred in not instructing the jury on contributory negligence. The Employers' Liability Law is a compensation law and the right of action therein provided is not governed by the rules applicable to common-law actions for damages, or to that action as modified by statute. *Arizona Copper Company* v. *Hammer*, 250 U. S. 400, 6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553. The negligence of the employer is not involved, neither is assumed risk, and contributory negligence is no defense to the action. "The only risk or hazard the employee assumes is his own negligence." *Consolidated Arizona Smelting Co.* v. *Egich*, 22 Ariz. 543, 199 Pac. 132. The statute, and the Constitution (par. 3154, Civ. Code 1913, and § 7, art. 18, Const.) provide that, if the accident in which the employee is injured was due to a condition or conditions of his occupation, the employer is liable; but, if the accident is caused by the negligence of the employee, he may not recover. We have held that negligence of the plaintiff that will defeat him means his "sole negligence." *Southwest Cotton Co.* v. *Ryan*, 22 Ariz. 520, 536, 199 Pac. 124. And in a concurring opinion by the late Justice BAKER in the Egich case, *supra,* he used this language:

"As I understand the Employers' Liability Law, an employee engaged in work in one of the hazardous occupations enumerated in the statute may re-

cover for any accident occurring in the ordinary course of events during his work, the only other essentials being that the accident must be due to a condition or conditions of his employment, and not brought about by his sole negligence or fault.''

The defendant in its answer evinced an acquaintanceship with these cases when it pleaded ''that the accident was occasioned by the sole negligence of the said plaintiff.''

The condition of the occupation may be good or bad, but whichever it is, if the employee's injury is caused by an accident due to such condition, he is entitled to recover. If an employee enter into any of the occupations mentioned in the Employers' Liability Law and his employment be surrounded by dangers on every hand and he is hurt because of such dangerous condition or conditions, the employer is liable to him, even though it is clear that by so exposing himself the employee is not free from negligence. The fact that he may know that the conditions under which he works are bad and dangerous will not defeat his right to compensation if he is injured because of such conditions. *Gazette Printing Co.* v. *Suits,* 27 Ariz. 371, 233 Pac. 595. The failure to instruct on contributory negligence was not error.

We conclude that the employee's negligence in order to defeat him must be superimposed upon the conditions of his occupation by some positive act of his but for which he would not have been injured. The condition of the pump after the guard was removed was dangerous and the greasy condition of the floor accentuated this danger many times. Thus there were two conditions that contributed to the accident that caused plaintiff's injury—the unguarded gear meshes and the greasy wet floor. One of these, so far as the evidence shows, was the usual, common condition under which plaintiff had done his work;

it was caused by leakage of grease and water from the pump. The other was a departure from the usual, ordinary, and standard condition under which plaintiff had performed his work. There was a cover or guard for the meshes and the rule and practice had been to keep the guard in place over the meshes. The guard was taken off for a temporary purpose and was left off pending the completion of that purpose. There is evidence that it was left in the dangerous condition under the instructions of one of the defendants, and if that version of the evidence be accepted as true, and that is what the jury did, the condition was not created by the act of plaintiff, but by the act of defendants, and the injury was caused by an accident due to a condition or conditions brought into existence and left uncorrected by the defendants. But it is contended by defendants that it was the duty of plaintiff to correct the dangerous condition by replacing the cover before undertaking to do his work, and that the jury should have been instructed that his neglect to do so was fatal to his cause of action. If that be the law, the failure of an employee to exercise due caution or ordinary care would defeat his right of action. It would impose upon him the duty to see that the conditions under which he worked were safe, and, if he omitted to do something which if done would have prevented accidental injury, he could not recover. These principles are deeply rooted in the law of negligence, but have no place under the Employers' Liability Law of this state. We do not think, as defendants insist, that the court should have instructed the jury that the evidence showed plaintiff's injury was due to his sole negligence.

The court instructed the jury that, if the plaintiff took the guard off the pump and failed to replace it, he could not recover, unless he was acting under the instructions of the defendants. This, it seems to

us, was as favorable to the defendants as they were entitled to. The instruction ignores the concurring cause of a greasy floor. That this contributed to the accident is evident. Plaintiff's injury, as it appears, was due to two conditions of his work, and the statute imposes liability upon the employer if the injury is "caused by an accident due to a condition or conditions" of the occupation.

The record appearing to be free from error, the judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.